UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JEREMY E. WITTMAN, )<br>)<br>      *Plaintiff,* )<br>)<br>   v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of Social )<br>Security, )<br>)<br>      *Defendant* ) | Cause No. 1:20-CV-430 RLM-SLC |

<u>ORDER AND OPINION</u>

Jeremy Wittman seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court took the appeal under advisement following a telephonic hearing on May 2, 2022, and for the following reasons REVERSES the Commissioner's decision and REMANDS for further proceedings.

I.    B<span style="font-size:smaller">ACKGROUND</span>

Mr. Wittman suffers from several physical and mental impairments dating back to his service in the U.S. Army. He protectively filed a Title II application for disability benefits on May 30, 2019, alleging that his disability began on May 21, 2019. Mr. Wittman's claim was denied initially and on reconsideration. He

attended a telephonic administrative hearing on June 8, 2020, where he and a vocational expert testified.

The ALJ issued an unfavorable decision to Mr. Wittman on June 18, 2020. The ALJ concluded that:

    1. Mr. Wittman met the insured status requirements of the Social Security Act through December 31, 2024.

    2. Mr. Wittman hadn't engaged in substantial gainful activity since May 21, 2019, the alleged onset date. 20 C.F.R. § 404.1571 *et seq.*

    3. Mr. Wittman had the following severe impairments: epilepsy, migraine headaches, and post-traumatic stress disorder. 20 C.F.R. § 404.1520(c).

    4. Mr. Wittman didn't have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

    5. Mr. Wittman has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he can occasionally climb stairs or ramps, stoop, kneel, crouch, or crawl; he's able to balance commensurate with performing the activities outlined in the residual functional capacity; he can never climb ladders, ropes, or scaffolds; he can frequently handle or finger with the left (nondominant) upper extremity; he must avoid even moderate exposure to moving machinery and unprotected heights; and he can have occasional interactions with coworkers, supervisors, and the general public.

    6. Mr. Wittman was unable to perform any past relevant work. 20 C.F.R. § 404.1565.

    7. Mr. Wittman was a younger individual (thirty-four years old) at the alleged onset date. 20 C.F.R. § 404.1563.

    8. Mr. Wittman has at least a high school education and is able to communicate in English. 20 C.F.R. § 404.1564.

    9. Transferability of job skills isn't an issue because the Medical-Vocational Rules supported a finding that Mr. Wittman wasn't disabled regardless of whether he has transferable job skills.

> 10. Considering Mr. Wittman's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Wittman can perform. The ALJ indicated that she considered the vocational expert's testimony that Mr. Wittman would be able to perform the requirements of occupations such as: bench assembler (120,000 jobs nationally), table worker (25,000 jobs nationally), and charge account clerk (85,000 jobs nationally).

The ALJ concluded that Mr. Wittman wasn't entitled to disability benefits because he wasn't disabled within the meaning of the Social Security Act. When the Appeals Council denied his request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II.  STANDARD OF REVIEW

"The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). A reviewing court doesn't decide whether a claimant is disabled, but evaluates whether substantial evidence supports the ALJ's decision that a claimant wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment

for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Instead, the court must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) (internal quotations omitted). While the ALJ isn't required "to address every piece of evidence or testimony presented, she must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

### III. DISCUSSION

Mr. Wittman argues that the ALJ's decision isn't supported by substantial evidence and contains legal errors that must be corrected on remand. Mr. Wittman presents four main arguments: (1) the ALJ committed legal error in the subjective symptom analysis; (2) the ALJ ignored the Department of Veterans Affairs disability determination, in violation of Social Security regulations; (3) the ALJ improperly relied on state agency opinions about Mr. Wittman's limitations; and (4) the residual functional capacity was unsupported.

### A. *Subjective symptom analysis*

Mr. Wittman contends the ALJ erred in how she considered Mr. Wittman's work history. The ALJ noted that Mr. Wittman experienced seizures, migraines,

4

and difficulty long before the alleged onset date but still managed to work for several years. The ALJ concluded that Mr. Wittman's limitations and inability to work must not have been as bad as he claimed. Mr. Wittman argues the ALJ ignored contrary evidence, namely that Mr. Wittman held five different jobs in that period and the longest only lasted a year and a half, that he left one job because of his anxiety working with others, that he left a job as an auto mechanic because of seizures and problems with gripping objects, and that he felt worthless not working and not being in the army. He compares this to other cases where an ALJ wrongly held a claimant's work history against the claimant despite the difficulty with which the claimant completed the job. Pierce v. Colvin, 739 F.3d 1046, 1051 (7th Cir. 2014).

The Commissioner responds by arguing that the ALJ weighed the evidence and made a determination Mr. Wittman disagrees with, but that isn't patently wrong. The Commissioner doesn't explain why the ALJ didn't address nor must address qualification to Mr. Wittman's work history.

Remand is warranted on this issue because the ALJ committed legal error in using Mr. Wittman's work history as evidence undermining the severity of his reported limitations him while ignoring contrary evidence concerning about how he performed work in that period, or at least by not addressing those qualifications on his ability to work. Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014).

5

Second, Mr. Wittman argues the ALJ's assessment of his conditions as "sporadic" is unsupported. Mr. Wittman argues this term contradicts his medical records, which include several ER visits for migraines and seizures and several outpatient appointments for the like. He points out that he gets virtually all his medical care from the VA, which tends to struggle with providing adequate care, and that the ALJ should have accounted for that limit to his care. He also argues that the ALJ erred by relying on Mr. Wittman's one-time decision to stop taking his medications without considering why Mr. Wittman did so—he said he "freaked out" with paranoia because of his PTSD and other mental conditions.

Although Mr. Wittman disagrees with the way the ALJ characterized some of the evidence, he hasn't shown that the ALJ committed this legal error or made a patently wrong credibility determination. The ALJ discussed the specific instances when Mr. Wittman sought treatment, so focusing on the ALJ's word choice of "sporadic" ignores the context of that part of the opinion. As for Mr. Wittman's argument that the ALJ should have considered the Department of Veterans Affairs' dysfunction and lack of resources, he cites to one case in which a court criticized the Department in dicta, Veterans for Common Sense v. Shinseki, 679 F.3d 1013, 1015 (9th Cir. 2012), but cites to no legal rule or record evidence that would require the ALJ to consider the Department of Veterans Affairs' overburdened resources. The ALJ's assessment of Mr. Wittman's as "sporadic" doesn't require remand.

Third, Mr. Wittman argues the ALJ erred by relying on Mr. Wittman's daily activities to find him less limited than alleged without considering how he performed daily activities. The ALJ noted that during September 2019 and October 2019 mental health exams Mr. Wittman reported poor mental health including hyperarousal, paranoia, and hypervigilance, with only two hours of sleep per night. Then, in October and November 2019, Mr. Wittman spent lots of time hunting, processing meat, mounting antlers, etc. The ALJ noted that these activities "seem to indicate a greater ability/fewer limitations in the use of his hands that that to which he testified."

According to Mr. Wittman, the ALJ incorrectly ignored that Mr. Wittman reported hunting in a wheelchair, reported bad mental health at the same appointment that he talked about hunting, and explained that hunting was the "only thing keeping him going" and was a way to get away from society. Mr. Wittman points to evidence that he needed help from others to cook, care for his daughter, drive to appointments, and so on, especially when he was suffering the residual effects of his seizures.

An ALJ can consider daily activities to assess a claimant's credibility but must be careful not to equate daily activities with work without considering how the claimant performs those activities. Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013). The ALJ didn't explain how she considered the qualifications to how Mr. Wittman completed the daily activities the ALJ considered, and the Commissioner doesn't explain why the ALJ didn't have to do so, so remand is

warranted so the ALJ can properly consider or explain how she considered qualifications to how Mr. Wittman performed daily activities.

### B. *Department of Veterans Affairs disability determination*

Mr. Wittman argues the ALJ violated Social Security regulations by not considering the Department of Veterans Affairs' determination that Mr. Wittman is "totally and permanently disabled" as of May 22, 2019.

The Social Security Administration doesn't defer to other agency's disability determination and an ALJ doesn't need to provide "any analysis in [her] determination or decision about a decision made by any other governmental agency." 20 C.F.R. § 404.1504. But an ALJ must consider all the supporting evidence underlying the other agency's decision that the ALJ receives in accordance with 20 C.F.R. § 404.1513(a)(1)–(4). Id. Mr. Wittman argues the ALJ's decision is reversible error because the ALJ didn't mention the VA's determination at all, so it's impossible to know whether the ALJ considered the underlying evidence. The Commissioner correctly points out that although the ALJ didn't mention the VA's determination, the ALJ considered the underlying evidence "almost by necessity, as the vast majority of the medical records in the case are records from VA facilities (Tr. 717-1197, 1206-1467)." Indeed, the ALJ relied on Exhibits 2F–7F throughout the opinion, which are all VA records underlying the VA's disability determination. The regulations require the ALJ to look at the evidence, not to invoke any special words to show that she's done so.

8

The ALJ complied with those regulations, so this argument doesn't merit remand.

### C. State agency opinions

Mr. Wittman argues that the ALJ erred because state agency opinions were outdated, incomplete, and unsupported, but the ALJ nonetheless found them persuasive and used them to craft the residual functional capacity.

First, Mr. Wittman asserts that the state agency opinions were incomplete because they didn't consider Mr. Wittman's headaches and seizures under any Listings. In his reply, Mr. Wittman argues that even though the state agency consultants didn't consider Listing 11.02 (epilepsy), the ALJ did, revealing an "evidentiary gap," since the ALJ could only find medical equivalence for epilepsy based on state agency opinions. SSR 17-2p, 2017 LEXIS 2, *7.

The Commissioner points out that Mr. Wittman doesn't argue that his impairments met or equaled the listing for epilepsy, so any error was harmless, and that the ALJ separately considered epilepsy.

Remand isn't appropriate on this issue. Even if the state agency consultants should have considered epilepsy, Mr. Wittman doesn't explain how the absence of that consideration undermines the residual functional capacity given that Step 3 (listed impairments) and Step 4 (RFC) are separate determinations. The later argument about SSR 17-2p is unavailing for the same reason—Mr. Wittman doesn't claim medical equivalence, so any evidentiary gap

was harmless at Step 3. To the extent that it was per se legal error for the ALJ to consider epilepsy without state agency opinions on epilepsy, Mr. Wittman didn't raise that argument until his reply, waiving the argument. *See* Wright v. United States, 139 F.3d 551, 553 (7th Cir. 1998).

Second, Mr. Wittman argues the state agency opinions were outdated because of new evidence of a left wrist fracture requiring surgery and an ER visit for a ten-day migraine with bad symptoms. For his wrist, Mr. Wittman cites to two medical records documenting that he fell on his left arm and broke his wrist. The records don't provide any prognosis as to how well he could use his left wrist. For his headaches and seizures, he cites to a single ER visit in February 2020 in which he reported a migraine that lasted ten days with nausea, blurred vision, vomiting, and two seizures in the prior week.

The Commissioner argues that this doesn't require remand because Mr. Wittman doesn't explain how considering this new evidence would result in greater limitations given that the state agency consultants expressly considered Mr. Wittman's migraines and seizures as well as manipulative limitations on Mr. Wittman's left hand. The Commissioner adds that the ALJ expressly acknowledged that the state agency assessments only reflected the evidence through the time of their review and the ALJ then added greater standing/walking limitations based on new evidence.

The new evidence Mr. Wittman cites doesn't require remand. In the case of medical opinions, "[a]n ALJ should not rely on an outdated assessment if later

10

evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." Moreno v. Berryhill, 882 F.3d 722, 728 (7th Cir. 2018). Mr. Wittman presents evidence that he broke his wrist, but that evidence includes no prognosis and says nothing about any additional limitations. To say that this new evidence would change the reviewing physician's mind would be speculative. The evidence of seizures, blurred vision, and the like is similar to all the other evidence the reviewing physicians had concerning his seizures and headaches. Mr. Wittman doesn't explain how this evidence is significantly different from evidence the ALJ did consider, rather than merely being cumulative, so the court can't conclude it would likely change the reviewing physician's opinion.

Lastly, Wittman argues the ALJ erred by substituting her conclusions for that of the consultants. The psychological consultants opined that Mr. Wittman could "complete work that is detailed, not complex and is set away from the public" and "would work better in isolated work settings where he does not have to have intense and frequent interactions with others." The ALJ imposed a limitation to "occasional interaction with coworkers, supervisors, and the general public." According to Mr. Wittman, the ALJ erred by excluding these limitations from the RFC after finding the state agency opinions persuasive, without explanation.

11

The Commissioner argues that the ALJ merely articulated the consultants' differently but that the limitations were substantially the same, so any difference is harmless.

The Commissioner is half right, half wrong. The ALJ included a limitation to "occasional interaction with coworkers, supervisors, and the general public," and Mr. Wittman doesn't explain how this is meaningfully different than working in "isolated work settings where [Mr. Wittman] does not have to have intense and frequent interactions with others." On the other hand, the state agency consultants recommended "work that is detailed, not complex" and the Commissioner doesn't explain how complexity of work is captured by limitations relating to interactions with others. The ALJ claimed this opinion was persuasive so should have explained why this limitation wasn't included or should've included the limitation. Remand is appropriate on the opinion regarding complexity of work.

### D. Residual functional capacity

Mr. Wittman argues the ALJ erred by excluding some limitations that should have been in the RFC and by including other limitations that are unsupported for one reason or another. Because the residual functional capacity is unsupported, according to Mr. Wittman, it follows that the final determination would be unsupported since the vocational expert didn't have a proper residual functional capacity to opine on. The Commissioner responds by saying that each

12

of Mr. Wittman's arguments is really about the weight of the evidence, citing to the evidence the ALJ relied on to support her conclusions.

Several of Mr. Wittman's objections to the residual functional capacity relate to evidence that after he has a seizure, Mr. Wittman experiences Todd's paralysis. Todd's paralysis includes temporary paralysis on one half of the body and difficulty walking, balancing, and standing, as well as back pain. Mr. Wittman testified that these symptoms last between a few hours and two weeks, and that he needs his wife, neighbors, and friends to help him with daily activities like walking, dressing, bathing, and cooking during those periods. Mr. Wittman argues that the residual functional capacity is unsupported because it reflects his abilities when he's not experiencing residual symptoms but doesn't account for his limitations between a seizure and when his Todd's paralysis subsides. He specifically argues that these symptoms make the residual functional capacity unsupported with respect to sedentary work; occasional climbing of ramps or stairs, stooping, kneeling, crouching, and crawling; and frequent handling and fingering with the left extremity. He also argues that the ALJ should have included an assistive device (a cane, walker, or wheelchair) in the residual functional capacity because he needs to use one of those three devices after a seizure, depending on the severity of the seizure and residual symptoms.

The ALJ noted paralysis from seizures when addressing Mr. Wittman's exposure to machinery and heights and said that sedentary work reflects his

temporary paralysis. The Commissioner argues that the residual functional capacity reflects the evidentiary findings the ALJ made, to which the court owes deference. The Commissioner emphasizes that some of the residual functional capacity limitations, like those involving balance, were adopted from the state agency opinions, which the ALJ found persuasive. The Commissioner adds that the ALJ considered evidence supporting and detracting from the need for an assistive device, so there was no legal error in omitting an assistive device in the residual functional capacity.

Remand is needed so the ALJ can properly consider or explain how the residual effects of Mr. Wittman's seizures are consistent with the residual functional capacity, or so the ALJ can recraft a residual functional capacity that's consistent with the residual effects of Mr. Wittman's seizures. Although the ALJ is responsible for weighing evidence and making credibility determinations, there's a logical gap when the ALJ credits Mr. Wittman's testimony about seizures and Todd's paralysis for parts of the residual functional capacity, but not for others. The residual functional capacity must either include all limitations or explain why contrary evidence isn't reflected in the residual functional capacity. <u>Villano v. Astrue</u>, 556 F.3d 558, 563 (7th Cir. 2009). This residual functional capacity only reflects Mr. Wittman's better days, when he isn't recovering from a seizure. Remand is appropriate for the ALJ to recraft the residual functional capacity to reflect Mr. Wittman's lasting symptoms or to more clearly explain why it's consistent with or needn't reflect those symptoms.

Next, Mr. Wittman argues the ALJ inadequately accounted for mental restrictions. The residual functional capacity limits Mr. Wittman to occasional interactions with coworkers, supervisors, and the general public, but Mr. Wittman contends the ALJ should've included mental restrictions based on his volatile mood (hyperarousal, irritability, anxiety, etc.), post-traumatic stress disorder, depressive disorder, generalized anxiety disorder, and seizures and headaches. He cites evidence that these mental restrictions limit Mr. Wittman's ability to take care of himself, interact with others, perform occupational tasks, and the like. He generally argues that these conditions require greater attention in the residual functional capacity. He specially argues the residual functional capacity should reflect limitations relating to his need to be off task or absent from work and to reflect his inability to handle stress given his anxiety and post-traumatic stress disorder.

The Commissioner responds by arguing that the ALJ based mental restrictions on the state agency consultants' persuasive opinions and imposed restrictions on interactions with others and argues the court should defer to how the ALJ assessed the evidence. The ALJ did consider evidence that supported and retracted mental restrictions and concluded that limiting Mr. Wittman's interactions with others would account for most of his mental limitations.

Remand is needed on only one of these issues Mr. Wittman raises. As the court explained earlier in this opinion with Mr. Wittman's successful argument about the state agency opinions, the ALJ found the state agency opinions

15

persuasive and those opinions included a limitation to detailed but not complex work. The ALJ neither incorporated that limit nor explained why that limitation wasn't included, despite being part of the persuasive state agency opinions. The ALJ did consider Mr. Wittman's other mental restrictions, however, and explained that limiting Mr. Wittman to occasional interactions with others would keep his mood disorders in check. Mr. Wittman doesn't present evidence about being off task such that the ALJ's determination on that issue was patently wrong. The ALJ should incorporate the state agency limitation to complex but not detailed work into her opinion on remand or explain why it's omitted.

## IV. CONCLUSION

Based on the foregoing analysis, the court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: <u>May 6, 2022</u>

<u> /s/ Robert L. Miller, Jr.</u>
Judge, United States District Court